IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01872-WYD-CBS

VITO JOSEPH KERSHAW,
    Plaintiff,
v.

J. GRAYSON ROBINSON, Sheriff,[1]
    Defendant.

___

ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

___

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on: (1) Defendant Robinson's Motion for Summary Judgment (filed July 12, 2010) (doc. # 60); and (2) Mr. Kershaw's "Motion for Summary Judgment . . ." (filed August 3, 2010) (doc. # 69). Pursuant to the Order of Reference dated September 18, 2009 (doc. # 12) and the memoranda dated July 12, 2010 (doc. # 61) and August 5, 2010 (docs. # 73 and # 74), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, Mr. Kershaw's Response (filed August 6, 2010) (doc. # 75), Defendant's Response (filed August 24, 2010) (doc. # 80), Defendant's Reply (filed August 20, 2010) (doc. # 79), the exhibits and affidavits, the entire case file, and the applicable law and is sufficiently advised in the premises.[2]

---

    [1] Defendants County of Arapahoe and State of Colorado were dismissed on September 15, 2009. (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (doc. # 10)).

    [2] Mr. Kershaw's August 9, 2010 filing (doc. # 76, pp. 1-6 of 6) is duplicated by his August 6, 2010 filing (doc. # 75, pp. 2-7 of 55). Thus, the court will strike doc. # 76 as duplicative and treat doc. # 75, pp. 1-55, as Mr. Kershaw's Response.

1

I. Statement of the Case

Mr. Kershaw is currently incarcerated at the Arapahoe County Detention Facility ("ACDF"). Mr. Kershaw filed his Prisoner Complaint on or about August 7, 2009. (*See* doc. # 3). Remaining in the case is a single claim for relief against Defendant Robinson pursuant to 42 U.S.C. § 1983 for "willfulness, or of recklessness, or of negligence . . .." (*See* Complaint (doc. # 3) at p. 6 of 12).[3] Mr. Kershaw also alleges that his rights "under the Constitution of the United States of America were violated." (*See id.*).

The facts underlying Mr. Kershaw's Complaint arise out of an assault that occurred in the ACDF on May 26, 2009. (*See* Complaint at p. 6 of 12). Mr. Kershaw was assaulted by another inmate, Jason Montgomery, after an argument about changing the television channel. (*See* doc. # 60-7). Mr. Kershaw suffered serious injury to his left eye. (*See, e.g.*, doc. # 69-7 at p. 8 of 46 (Operative Report)). Mr. Kershaw believes that Mr. Montgomery hit him "with a shiny square piece of metal" that was part of an identification card. (*See* doc. # 60-7 at p. 2 of 2). Mr. Kershaw seeks compensatory damages and injunctive relief in the form of "all metal clips be removed." (*See* Complaint (doc. # 3) at pp. 7, 12 of 12).

---

[3] As Claims Two and Three were alleged only against Defendants County of Arapahoe and the State of Colorado, these claims dropped from the case with the dismissal of Defendants County of Arapahoe and the State of Colorado on September 15, 2009. (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (doc. # 10)).

To the extent that Mr. Kershaw's remaining claim is based on negligence, "[i]njuries inflicted by governmental negligence are not addressed by the United States Constitution," *Daniels v. Williams*, 474 U.S. 327, 331-33 (1986). Thus, negligence may not serve as the basis for a § 1983 claim. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

II.     Standard of Review

Both Mr. Kershaw and Defendant Robinson seek summary judgment. "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (cited in *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2000)).

> Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law. When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. All doubts must be resolved in favor of the existence of triable issues of fact.
> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment

proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a *pro se* litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

III.      Analysis

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [plaintiff] must allege both the deprivation of a federal right and that the alleged action was taken under color of state law") (internal quotation marks and citation omitted).

A.      Liability under § 1983 of Defendant Robinson in his Individual Capacity

Mr. Kershaw does not specify in his pleadings whether he is suing Defendant Robinson in his official capacity, his individual capacity, or both. To the extent that he is suing Defendant Robinson in his individual capacity, individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional

4

violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

A defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1290 (D. Colo. 2009) ("*respondeat superior* is not within the purview of § 1983"). "There is no concept of strict supervisor liability under § 1983." *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151-52 (10th Cir. 2006). "Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Id*. There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). *See also McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable in a section 1983 action unless he "participated or acquiesced" in an alleged constitutional violation). A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Mr. Kershaw was booked into the ACDF on August 15, 2008 on a charge of violation of probation in case 07CR526. (*See* doc. # 3 at p. 3 of 12 ¶ 2; doc. # 69-3 at p. 1 of 2). On

May 26, 2009, Mr. Kershaw called for medical attention. (*See* docs. # 60-1, # 60-2, # 60-3, # 60-5, # 60-7). Mr. Kershaw reported and now alleges that Mr. Montgomery entered his cell and hit him in the face while holding a metal object, possibly a metal clip found on the back of inmates' identification badges. (*See* docs. # 60-1, # 60-2, # 60-3, # 60-4, # 60-5, # 60-7, # 60-8, # 60-9, # 60-10, # 60-12). Mr. Kershaw and inmate Montgomery had previously argued about changing the television channel. (*See* docs. # 60-2, # 60-3, # 60-5, # 60-7, # 60-9, # 60-10, # 60-11, # 60-12). After extensive searches, no weapons were found. (*See* docs. # 60-1, # 60-2, # 60-3, # 60-4, # 60-5, # 60-13, # 60-14, # 60-15). Defendant Robinson was not present at the May 26, 2009 incident (*see* doc. # 60-16), nor does Mr. Kershaw allege that Defendant Robinson was present. Defendant Robinson argues that Mr. Kershaw's claim against him must be dismissed for failure to allege the requisite personal participation.

Mr. Kershaw has not alleged or demonstrated anything more than *respondeat superior* liability of Defendant Robinson. Mr. Kershaw's allegations relate only to Defendant Robinson's role as supervisor. Mr. Kershaw alleges that "I was assaulted with serious bodily injury with metal from an I.D. clip that the deputies give to all inmates . . . all because sheriff J. Grayson Robinson lets his deputies give out metal clips, and lack of security in a protective custody cellblock" (*See* Complaint at pp. 3-4 of 12; *see also* p. 6 of 12) ("Sheriff Robinson is at fault for allowing metal on I.D. cards also lack of security in a protective custody cellblock [sic]."); doc. # 75 at p. 5 of 55 ("Mr. Robinson has chosen to direct his employees[ ] such as classification specialists and others to do his job at arapahoe county detention facility . . . .").

Mr. Kershaw has not alleged or presented evidence that Defendant Robinson

personally participated in the incident that caused Mr. Kershaw's injury. Defendant Robinson was not present during the incident and had no specific knowledge of Mr. Kershaw's presence in the facility. (*See* doc. # 60-16 at ¶¶ 3-4). There is no allegation in the Complaint or evidence in the record to support Mr. Kershaw's conclusory statement in his Motion that Defendant Robinson "personally gave out these metal clips to inmates." (*See* doc. # 69 at p. 2 of 9). Mr. Kershaw does not allege or present evidence of the date, time, location, or circumstances whereby Defendant Robinson personally distributed a metal clip to any inmate. "[C]onclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted).

Defendant Robinson "did not personally discuss, direct, request, participate in and/or instruct any of my employees or subordinate officers with respect to the Plaintiff's alleged protective housing request . . . ." (*See* doc. # 60-16 at ¶ 5). Mr. Kershaw's citation to the Arapahoe County Sheriff's Office Sullivan Detention Center Inmate Informational Handbook does not establish Defendant Robinson's personal participation, as it indicates that a classifications specialist, not Defendant Robinson, assigned inmate housing. (*See* doc. # 69-4 at p. 21 of 36). Nor does Mr. Kershaw's citation to his own signature acknowledging "Counseling for Sexual Assault Risk" establish Defendant Robinson's personal participation. (*See* doc. # 75 at p. 10 of 55). Defendant Robinson did not sign the form and there is no allegation or evidence of a sexual assault.

Mr. Kershaw's allegations and evidence do not support a claim that Defendant Robinson had any direct involvement in, personal participation in, or supervisory liability for the alleged violation of Mr. Kershaw's constitutional rights. Mr. Kershaw has not adequately alleged or demonstrated "an affirmative link between the supervisor and the

violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Serna*, 455 F.3d at 1151 (internal quotation marks and citations omitted). Mr. Kershaw's failure to allege or demonstrate the requisite personal participation leaves no basis for holding Defendant Robinson individually liable under § 1983.

B.   No Constitutional Violation

Even if Mr. Kershaw had adequately alleged and demonstrated personal participation by Defendant Robinson, the court concludes that he has not stated or demonstrated a constitutional claim against Defendant Robinson.

While Mr. Kershaw has not alleged violation of a specific constitutional provision, his claim is properly addressed as an Eighth Amendment claim, as a failure to protect claim is essentially a cruel and unusual punishment claim. *Mohamed v. Tattum*, 380 F. Supp. 2d 1214, 1224 (D. Kan. 2005) (citing *Dowling v. Hannigan*, 968 F. Supp. 610, 612 n. 5 (D. Kan. 1997) (determining that a prisoner's failure to protect claim should be analyzed under Eighth Amendment standards)). *See also Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."). *See also* Mr. Kershaw's Motion (doc. # 69) at pp. 4, 6, 7 (arguing violation of 8th and 4th Amendments).[4] The court therefore applies the Eighth Amendment standard

---

[4]   It is not clear to the court why Mr. Kershaw mentions in his Motion the Fourth Amendment of the United States Constitution, which concerns unlawful searches and

in evaluating Mr. Kershaw's claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. at 319. "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Where an Eighth Amendment claim is based upon conditions of confinement, an inmate must satisfy a two-prong test that (1) the deprivation suffered was "objectively 'sufficiently serious,'" and (2) the defendant had a "sufficiently culpable state of mind" or was "deliberately indifferent" to the inmate's health or safety. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991).

---

seizures. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated. . . ." There are no allegations in the Complaint and no factual basis for asserting a claim in this case based on the Fourth Amendment. *See, e.g.,Falls v. Nesbitt*, 966 F.2d 375, 377 n. 3 (8th Cir. 1992) ("the Eighth Amendment ban on cruel and unusual punishment applies to a prisoner's rights to be protected from harm by his fellow inmates") (internal quotation marks omitted); *Ricks v. Norris*, 2010 WL 2383910 * (E.D. Ark. June 11, 2010) ("[T]he single, pertinent source of constitutional protection in this case is the Eighth Amendment's prohibition of cruel and unusual punishment, which encompasses an inmate's right to be protected from harm by fellow inmates.") (citation omitted) (copy attached to this Recommendation); *Rivera-Quinones v. Rivera-Gonzalez*, 397 F. Supp. 2d 334, 343 (D. Puerto Rico 2005) ("Under the Eighth Amendment prison officials must guarantee the safety of prisoners including protection from attacks from fellow inmates.") (citation omitted); *Lacy v. Berge*, 921 F. Supp. 600, 608 (E.D. Wis. 1996) ("The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates.") (citation omitted).

The objective component of the Eighth Amendment test requires Mr. Kershaw to show that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. This includes "official conduct that is sure or very likely to cause serious injury at the hands of other inmates." *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) (internal quotation marks and citation omitted).

The subjective component of the Eighth Amendment test requires Mr. Kershaw to show that Defendant Robinson had the culpable state of mind known as "deliberate indifference." *Farmer*, 511 U.S. at 834. Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. *See also Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997). "To be guilty of deliberate indifference, the defendant must know he is creating a substantial risk of bodily harm." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks and citation omitted).

Mr. Kershaw's allegations and evidence do not demonstrate Defendant Robinson's liability for failing to protect him from the May 26, 2009 assault by Mr. Montgomery. As to the objective component of the Eighth Amendment test, Mr. Kershaw fails to allege or show that he was incarcerated under conditions posing a substantial risk of serious harm.

10

The Eighth Amendment reaches conduct that "is sure or very likely to cause serious injury at the hands of other inmates." *Benefield*, 241 F.3d at 1272 (internal quotation marks and citation omitted). Mr. Kershaw does not allege or show that Mr. Montgomery posed any specific threat to him or to any other inmate. Mr. Kershaw has not alleged or shown any history or even a single previous incident of inmate-on-inmate violence at ACDF. He does not allege or demonstrate that Mr. Montgomery had previously assaulted any inmate or that any inmate had previously used an I.D. badge as a weapon. At the time of this incident, Defendant Robinson "had no knowledge of any previous complaint, report, or altercation involving the metal clips attached to inmates' identification badges." (*See* doc. # 60-16 at ¶ 6). Mr. Kershaw does not allege or show that he alerted jail employees to the possibility that he was at risk of harm from Mr. Montgomery. Mr. Kershaw's allegations and evidence are not sufficient to state or prove that the conditions at ACDF posed a substantial risk of harm.

As to the subjective component of the Eighth Amendment test, Mr. Kershaw's Complaint contains no allegation and the record contains no evidence that Defendant Robinson was deliberately indifferent to a substantial risk that harm would befall Mr. Kershaw. Mr. Kershaw's own allegations indicate that "no deputy knew anything until I pushed the intercom, and said I needed medical attention." (*See* Complaint at p. 4 of 12). Mr. Kershaw argues that Mr. Montgomery was "known to be dangerous" and "known to possess weapons." (*See* doc. # 69 at pp. 3-4, 7 of 9). Mr. Kershaw cites an "Information Slip for Case Filings" that contains a "yes" checkmark next to the notation "Known to Possess Weapons." (*See* doc. # 75 at p. 17 of 55). The evidence does not demonstrate who knew that Mr. Montgomery had possessed weapons, what weapons he possessed,

11

or where or when he possessed a weapon. There is no evidence that Defendant Robinson knew anything about Mr. Montgomery or that he prepared or even saw the document Mr. Kershaw cites. Other than Mr. Kershaw's allegation that Mr. Montgomery used a metal clip from an I.D. badge, there is no evidence in the record that Mr. Montgomery used a weapon against Mr. Kershaw. Searches by ACDF officers did not recover any weapons or metal clips. (*See, e.g.,* docs. # 60-1, # 60-2, # 60-3, # 60-4, # 60-5, # 60-13, # 60-14, # 60-15). Mr. Kershaw has not alleged or demonstrated that Mr. Montgomery posed any specific risk to him or that Defendant Robinson had knowledge of any risk to Mr. Kershaw and deliberately disregarded such risk.[5]

To the extent that Mr. Kershaw also generally alleges a "lack of security in a protective custody cellblock" (*see* Complaint at pp. 3-4 of 12; *see also* p. 6 of 12 ("Sheriff Robinson is at fault for . . . lack of security in a protective custody cellblock [sic].")), such claim also fails. Other than his conclusory allegation of "lack of security in a protective custody cellblock," Mr. Kershaw does not allege or show any security deficiencies for protective custody inmates at ACDF. Mr. Kershaw does not allege or show that any inmates in protective custody were ever attacked by Mr. Montgomery or anyone else. There are no allegations and no evidence that Defendant Robinson knew of systemic deficiencies posing significant risks to protective custody inmates at ACDF. Mr. Kershaw

---

[5] Mr. Kershaw argues that Defendant Robinson presents perjury and lies in his affidavit (doc. # 60-16). (*See* doc. # 69 at p. 1 of 9; doc. # 75 at pp. 2, 3, 7 of 55). Mr. Kershaw's reliance on a credibility determination is insufficient as a matter of law. "Standing alone, attacks on the credibility of evidence offered by a summary judgment movant do not warrant denial of a summary judgment motion." *Nat. Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742 (10th Cir. 2004) (citing *Jenkins v. Wood*, 81 F.3d 988, 990 ("requiring the nonmoving party to present specific facts demonstrating the existence of a material fact to be tried").

does not allege or demonstrate that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," or that "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it," such that a trier of fact could find that the defendant-official had actual knowledge of the risk. *Farmer*, 511 U.S. at 843 (internal quotation marks omitted). Mr. Kershaw fails to allege or demonstrate that an "inference could be drawn that a substantial risk" of attack on protective custody inmates existed or that Defendant Robinson drew such an inference. *Benglen v. Zavaras*, 7 F. Supp. 2d 1171, 1175 (D. Colo. 1998).

As Mr. Kershaw has not stated or demonstrated an Eighth Amendment violation, Defendant Robinson is entitled to summary judgment on the Complaint.


C.     Liability under § 1983 of Defendant Robinson in his Official Capacity

To the extent that Mr. Kershaw sues Defendant Robinson in his official capacity, "[t]he Supreme Court has determined that an official-capacity suit brought under § 1983 generally represent[s] only another way of pleading an action against an entity of which an officer is an agent, and as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Moss v. Kopp*, 559 F.3d 1155, 1168 n. 13 (10th Cir. 2009) (internal quotation marks and citation omitted). Municipalities and local governmental entities "can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights." *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1177 (10th Cir. 2003) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 689-90 (1978) (holding

13

that municipalities and other local governmental bodies are "persons" within the meaning of 42 U.S.C. § 1983)). "A municipality, however, cannot be held liable for the actions of its employees under the theory of *respondeat superior*." *Marshall*, 345 F.3d at 1177 (citation omitted). *See also Lopez v. LeMaster*, 172 F.3d 756, 762-63 (10th Cir. 1999) ("The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees.") (internal quotation marks and citation omitted).

Municipalities may be held liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom. *See Monell*, 436 U.S. at 690-91, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). *See also Winters v. Board of County Commissioners*, 4 F.3d 848, 855 (10th Cir. 1993) ("[I]n order for the County and the Sheriff's Department to be liable under § 1983 the constitutional violation must be a result of a government custom or policy.").

> [M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir.

2010) (internal quotation marks and citations omitted).  "Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997) (internal quotation marks and citation omitted).

Mr. Kershaw argues that "Sheriff Robinson's personal custom is to give metal I.D. clips to all inmates on arrival at this facility." (*See* Motion (doc. # 69) at p. 5 of 9; *see also* doc. # 75 at p. 1 of 55 ("Sheriff Robinson also personally through his customs, individual decisions, and his gross abuse, supplied the 'weapon' metal I.D. clip to Mr. Montgomery . . ."); p. 2 of 55 ("Mr. Robinson's actions and custom of giving inmates metal that are used as weapons . . ."); p. 4 of 55 ("Mr. Robinson[']s custom and individual decision of handing out metal . . "); p. 6 of 55 ("Through his customs as policy maker through his individual decisions . . ."). However, Mr. Kershaw does not allege in the Complaint or show by the evidence the existence of any unconstitutional custom. First, there are no allegations or evidence that Defendant Robinson implemented the alleged custom of giving inmates I.D. badges with metal clips. Second, Mr. Kershaw cites to and the court finds no legal authority that giving inmates I.D. badges is unconstitutional. Mr. Kershaw has only alleged a single incident of constitutional deprivation. "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than a single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation." *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985) (internal quotation marks omitted). Third, Mr. Kershaw has not alleged or demonstrated any pattern of violations of inmates' constitutional rights

based on any custom. *See Bryan County*, 520 U.S. at 410-11. Fourth, the violation must demonstrate deliberate indifference to the rights of Mr. Kershaw. *City of Canton*, 489 U.S. at 388. Mr. Kershaw has not alleged any deliberately indifferent conduct. Finally,

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404. *See also Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir.1998) (requiring proof that policy or custom is the moving force behind governmental employee's constitutional violation). Mr. Kershaw was not injured by any jail employee; rather, Mr. Montgomery was the moving force behind the injury to Mr. Kershaw. There is simply no direct causal link alleged between any action of Defendant Robinson in his official capacity and any constitutional violation. *See Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997).

Further, because the court has determined, *supra*., that Mr. Kershaw fails to state or demonstrate a claim that his constitutional rights were violated, he cannot show that any policy or custom of Defendant Robinson at the jail caused such a violation. *See Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted); *Wilson v. Meeks*, 98 f.3d 1247, 1255 (10th Cir. 1996) ("a municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

The court finds Mr. Kershaw has failed to allege or demonstrate sufficient facts to

establish a direct causal connection between the alleged constitutional violation and a custom of Defendant Robinson at the jail. Defendant Robinson in his official capacity is entitled to summary judgment on the Complaint.

D.   Qualified Immunity

Defendant Robinson raises the defense of qualified immunity to Mr. Kershaw's claim against him in his individual capacity. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

As the court has concluded in this Recommendation that Mr. Kershaw has failed to demonstrate violation of a constitutional right by Defendant Robinson, Defendant Robinson is entitled to qualified immunity. *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

Accordingly, IT IS ORDERED that Mr. Kershaw's August 9, 2010 filing (doc. # 76) is STRICKEN as duplicative and his August 6, 2010 filing (doc. # 75, pp. 1-55) is treated as his Response.

Further, IT IS RECOMMENDED that:

1.  Defendant Robinson's Motion for Summary Judgment (filed July 12, 2010) (doc. # 60) be GRANTED.

2.  Mr. Kershaw's "Motion for Summary Judgment . . ." (filed August 3, 2010) (doc. # 69) be DENIED.

3.  Summary judgment enter in favor of Defendant and against Plaintiff on the Complaint.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and

18

recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 12th day of October, 2010.

BY THE COURT:

　s/Craig B. Shaffer　　　　
United States Magistrate Judge